## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| **STUDENTS FOR LIFE USA**, an expressive student organization at the University of South Alabama,<br><br>                    Plaintiff,<br><br>        v.<br><br>**TONY G. WALDROP**, in his official capacity as President of the University of South Alabama; **JOHN W. SMITH**, in his official capacity as Vice President for Student Affairs; **MICHAEL A. MITCHELL**, individually and in his official capacity as Assistant Vice President for Student Affairs and Dean of Students; **JOHN W. STEADMAN**, individually and in his official capacity as Dean of the College of Engineering,<br><br>                    Defendants. | Case No.<br><br>**VERIFIED COMPLAINT** |

Plaintiff Students for Life USA, by and through counsel, and for its Complaint against the Defendants, hereby states as follows:

### INTRODUCTION

1.     The cornerstone of higher education is the ability of students to participate in the "marketplace of ideas" on campus.  That marketplace depends on free debate between students—debate that is spontaneous, ubiquitous, and often anonymous—and is carried out through spoken word, flyers, signs, and displays.

2.      This case arises from policies and practices of the University of South Alabama (the "University") and public officials employed by the University that restrict the expressive rights of students.  Instead of encouraging free discourse and debate on campus, the University restricts student speech to one small speech zone that occupies less than 0.01% of the University's main campus, unless the Vice President of Student Affairs, in his discretion, allows the students to use another area of campus.  Individual campus departments also retain unfettered discretion to regulate the use of the sidewalks, lawns, quadrangles, and open space outside their respective buildings.

3.      In addition, students may not speak spontaneously and anonymously on campus.  The University requires students and student organizations to obtain a permit three days in advance of when they want to speak—whether through oral or written communication.  The permitting process gives the University unfettered discretion to determine whether students may speak at all.  These University policies and practices chill protected student speech and disable the ability of students to speak on campus about recent and unfolding events.

4.      When Plaintiff Students for Life USA sought to discuss its pro-life viewpoints on campus and host an expressive display called a cemetery of innocents, University officials required it to get advanced permission and then assigned the group to the one speech zone, even though other student organizations regularly display unattended signs elsewhere on campus.

5.      This action is premised on the United States Constitution concerning the denial of Plaintiff's fundamental rights to freedom of speech, due process, and equal protection of law.

6.      The aforementioned policies and practices are challenged on their face and as applied to Plaintiff.

7.     Defendants' policy and practice has deprived and will continue to deprive Plaintiff of its paramount rights and guarantees under the United States Constitution.

8.     Each and every act of Defendants alleged herein was committed by Defendants, each and every one of them, under the color of state law and authority.

## JURISDICTION AND VENUE

9.     This civil rights action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

10.    This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

11.    This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343; the requested declaratory relief pursuant to 28 U.S.C. §§ 2201-02; the requested injunctive relief pursuant to 28 U.S.C. § 1343 and Fed. R. Civ. P. 65; and costs and attorneys fees under 42 U.S.C. § 1988.

12.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the Defendants reside in this district and/or all of the acts described in this Complaint occurred in this district.

## PLAINTIFF

13.    Plaintiff Students for Life USA is an unincorporated expressive student organization made up of University students.

14.    Students for Life USA applied to be a recognized student organization in October 2013 and the University granted it official recognition in November 2013.   Students for Life USA is registered currently as a recognized student organization at the University.

15.    Students for Life USA brings this suit on behalf of itself as a recognized student organization at the University and on behalf of its individual student members.

## DEFENDANTS

16.    Defendant Tony G. Waldrop, in his official capacity, is, and was at all times relevant to this Complaint, the President of the University of South Alabama, a public university organized and existing under the laws of the State of Alabama.

17.    The University is governed by a Board of Trustees.

18.    The Board of Trustees has designated the University President as the chief educational and administrative officer of the University.

19.    The President is responsible for the execution of the policies of the Board of Trustees and has the authority necessary to conduct the programs of the University, including the authority to award degrees, add officers to the University which he or she deems necessary, delegate authority among subordinates and all other authority which shall, from time to time, be delegated by the Board of Trustees to the President.

20.    The University's Board of Trustees delegates to Defendant Waldrop the responsibility for final policymaking authority concerning student free speech activities at the University.

21.    Defendant Waldrop is responsible for enactment and enforcement of University policies, including the solicitation policy challenged herein, and their application to speech activities of Students for Life USA.

22.    Defendant Waldrop possesses the authority and responsibility for coordination and approval of campus solicitation by students, employees, and third parties.

23.    All changes in campus policy concerning solicitation are made only with the prior approval of Defendant Waldrop.

4

24.     Defendant Waldrop has not instructed the Defendants to change or alter the solicitation policy to comply with constitutional mandates.

25.     As president, Defendant Waldrop has the final authority to review, approve, or reject requests to use campus facilities and grounds by students.

26.     Defendant Waldrop is sued in his official capacity.

27.     Defendant John W. Smith is, and was at all times relevant to this Complaint, the Vice President of Student Affairs at the University of South Alabama, a public university organized and existing under the laws of the State of Alabama.

28.     For a period of time during the events described in this Complaint, Defendant Smith was Acting President of the University and executed the official authority and responsibility for the office of the president of the University.

29.     Defendant Smith, in consultation with Defendant Waldrop, is responsible for enactment and enforcement of University policies, including the solicitation policy challenged herein, and their application to speech activities of Students for Life USA.

30.     Defendant Smith possesses the authority and responsibility for coordination and approval of campus solicitation by students, employees, and third parties.

31.     All changes in campus policy concerning solicitation are made only with the prior approval of Defendant Smith and the Defendant Waldrop.

32.     Defendant Smith has not instructed the Defendants to change or alter the solicitation policy to comply with constitutional mandates.

33.     Defendant Smith has authority to review, approve, or reject requests to use campus facilities and grounds by students.

34.     Defendant Smith is sued in his official capacity.

35.    Defendant Michael A. Mitchell is, and was at all times relevant to this Complaint, Vice President for Student Affairs and Dean of Students at the University of South Alabama, a public university organized and existing under the laws of the State of Alabama.

36.    Defendant Mitchell is responsible for administration and policymaking for the university, as delegated to him by Defendant Smith, including the solicitation policy challenged herein.

37.    Defendant Mitchell, in consultation with and the approval of Defendant Smith, is responsible for enactment and enforcement of University policies, including the solicitation policy challenged herein that was applied to Students for Life USA.

38.    Defendant Mitchell, pursuant to the powers delegated to him by Defendant Smith, is responsible for overseeing the University's Division of Student Affairs, including the Office of Student Activities, and he creates, reviews, authorizes, and enforces the policies of those departments.

39.    One of Defendant Mitchell's responsibilities is to review and give final approval or disapproval to requests by students to engage in expressive activities on campus and to regulate use of the University's designated speech zone.

40.    In executing his duty to review student speech requests, Defendant Mitchell implements University policy regarding solicitation by students.

41.    Defendant Mitchell enforced the solicitation policy against Students for Life USA when it desired to distribute pro-life information and host a cemetery of innocents on campus.

42.    Defendant Mitchell possesses the authority to change and enforce the solicitation policy challenged herein.

43.     Defendant Mitchell is sued both in his individual and official capacities.

44.     Defendant John W. Steadman is, and was at all times relevant to this Complaint, Dean of the College of Engineering at the University of South Alabama, a public university organized and existing under the laws of the State of Alabama.

45.     As dean of the College of Engineering, Defendant Steadman is charged with the responsibility to enforce the University's solicitation policy on the University grounds surrounding the engineering building on campus, including deciding whether to approve or disapprove of student speech requests on those grounds.

46.     Defendant Steadman decided that Students for Life USA's pro-life expression was "controversial" and for that reason refused to allow the group to engage in speech on the lawns outside the College of Engineering building.

47.     Defendant Steadman is sued in both his individual and official capacities.

## FACTUAL BACKGROUND

48.     University of South Alabama is a public university organized and existing under the laws of the State of Alabama, and receives funding from the State of Alabama to operate.

49.     The University's main campus is composed of various publicly-accessible buildings and outdoor areas, including public streets, sidewalks, open-air quadrangles, and parks.  A copy of the University's main campus map is attached as Exhibit 1 to this Complaint.

50.     The University's main campus is approximately 1,224 acres, which is approximately 53,317,440 square feet of land.  A copy of the relevant pages of the

University's 2013-2014 Fact Book containing the acreage are attached as Exhibit 2 to this Complaint.

51.    The University's main campus has many suitable streets, sidewalks, open-air quadrangles, parks, and open space where expressive activity will not interfere with or disturb the University's educational environment or access to buildings and sidewalks.

52.    The University recognizes that organized student groups are a valuable part of the student educational environment, because they further the University's educational mission.

53.    University policy provides for the official recognition of student groups.  A copy of the University's Student Organization Handbook is attached as Exhibit 3 to this Complaint.

54.    Among other things, the benefits of official recognition include access to mandatory student fee funding, reservation of campus facilities, soliciting students, and posting flyers.  Ex. 3 at 015.

55.    All recognized student organizations must adhere to the University's policies and procedures.

### Defendants' Solicitation Policy

56.    The University regulates student oral, written, and symbolic speech through a Solicitation Policy.

57.    The University's Solicitation Policy permits student organizations to engage in solicitation activities such as fundraisers, information distribution, and organizational promotion on campus.   A copy of the Solicitation Policy, as published in the Student Handbook the *Lowdown*, is attached as Exhibit 4 to this Complaint.

58.    The University and Defendants Waldrop, Smith, and Mitchell define solicitation to include all speech.

59.    The Solicitation Policy requires student organizations to get a permit for expressive activities from the "designated facility representative." Ex. 4 at 113.

60.    The Solicitation Policy states "[n]on-University groups, individuals or businesses are not permitted to solicit or distribute information in University buildings or on the grounds except at designated places during designated times such as Jag Blast and Jag Fest." *Id.*

61.    The Solicitation Policy only mentions student organization speech, not individual student speech.

62.    But it is the Defendants' policy and practice to apply the Solicitation Policy to individual students and student organizations who want to speak to their peers about issues, hold events, and display signs on campus.

63.    Under the Solicitation Policy, the University may prohibit student organizations from engaging in speech if they violate University policies, rules, and regulations.

64.    Under the Solicitation Policy, students and student organizations may speak only in the speech zone near the Student Center, whether their speech is planned or unplanned.

65.    Only Defendants Waldrop, Smith, and Mitchell, in their discretion, may allow students and student organizations to speak outside the Student Center speech zone.

66.    Students and student organizations must request permission to use the Student Center speech zone at least three days prior to their intended activity.

67.    The Solicitation Policy states that "[d]emonstrations, speeches, and debates will be held around the Student Center unless the Vice President for Academic Affairs is able to coordinate another appropriate campus location no less than three working days prior to the event." *Id.*

68.     Under the Solicitation Policy, students and student organizations may not distribute flyers outside the speech zone, unless granted an exception by Defendants Waldrop, Smith, or Mitchell.

69.     Under the Solicitation Policy, students and student organizations may not distribute flyers unless they obtain a permit three days prior to their intended activity.

70.     The Solicitation Policy requires students and student organizations to identify "the individual or organization involved."  *Id.*

71.     The Solicitation Policy was issued by Defendant Waldrop or his predecessor, and he has the authority to modify or rescind the policy.

72.     Defendant Waldrop has delegated authority to enforce the Solicitation Policy to Defendants Smith and Mitchell.

73.     The Solicitation Policy contains no guidelines or standards to limit the discretion of Defendants Smith or Mitchell or other University officials in granting, denying, relocating, or restricting requests by student organizations to engage in expressive activity within or outside the Student Center speech zone.

74.     The Solicitation Policy contains no deadlines or timetables in which Defendants Smith or Mitchell or other University officials must respond to a permit request.

75.     The Solicitation Policy contains no options for Defendants Smith or Mitchell or other University officials to waive the three day notice requirement when student organizations want to speak spontaneously in response to recent or unfolding events.

76.     One exception to the Solicitation is allowing student organizations to hang "sheet signs" on campus to advertise upcoming events.

77.     Defendants Waldrop, Smith, and Mitchell, in coordination with the Student Government Association, permit student organizations to hang sheet signs

on campus to advertise weekly meetings, events, activities, homecoming events, and Student Government Association election materials.

78.     Student organizations regularly hang sheet signs in the middle of a traffic circle on campus.

79.     The sheet signs are hung by rope attached to trees in the middle of the traffic circle.

80.     The sheet signs are unattended displays.

81.     Students and student organizations must request permission to hang a sheet sign.

82.     Defendants Waldrop, Smith, and Mitchell have the final authority to approve or disapprove of sheet signs on campus.

<b>Background on Students for Life USA</b>

83.     Students for Life USA is founded upon the undeniable truth that all human life from the point of conception until natural death is sacred and has inherent dignity.

84.     The purpose of Students for Life USA is to peacefully sustain this dignity through the promotion and defense of the culture of life.

85.     Students for Life USA expresses its pro-life message on the University's campus through a variety of means including flyers, signs, peaceful demonstrations, hosting tables with information, inviting speakers to campus, and talking with fellow students about pro-life ideas, just to name a few.

86.     When engaged in these expressive activities, Students for Life USA discusses political, religious, social, cultural, and moral issues, events, and ideas.

87.     In the past, Students for Life USA has conducted expressive events near the Student Center and Humanities Building.

88.     Students for Life USA has used sidewalk chalk to express its pro-life message to the student body, held meetings to organize members on pro-life

11

causes, given away cupcakes to students coming and going from class, and held an event to explain how Planned Parenthood and the abortion industry operates.

**Defendants' Restriction of Students for Life USA's Speech**

89.     During the week of October 1, 2013, Students for Life USA requested permission from Sergio Washington and Rachel Bolden, both employees of the University's Student Center, to hold a cemetery of innocents on October 15, 2013, on the empty plot of land where a former Regions Bank was located at corner of University Boulevard and Old Shell Road.

90.     A cemetery of innocents consists of small crosses placed in the ground in a confined area to represent the innocent lives lost due to abortion.

91.     October 15, 2013 was the Pro-Life Day of Silent Solidarity, a national event where students refrain from speaking orally to remember children lost due to abortion.

92.     Students for Life USA chose the area at the corner of University Boulevard and Old Shell Road because it would allow the group to express its pro-life message to not only students on campus, but also the wider Mobile community.

93.     Even though Students for Life USA was not a fully recognized student organization in October 2013, the lack of recognition was not an issue that prevented the University from considering the group's request.

94.     The land Students for Life USA wanted to use in October 2013 is owned by the University and empty except for a few trees.

95.     On information and belief, the City of Mobile has held an event called Market on the Hill at the empty lot for the past few years.

96.     The University maintenance department told Students for Life USA that the University did not own the land, but the City of Mobile told the group that the University did own the land.

97.   On information and belief, however, Rachel Bolden, Assistant Director of the Student Center, informed Students for Life USA that the empty lot was "non-reservable space" and told the group to use the speech zone located next to the Student Center instead.

98.   On information and belief, Defendant Mitchell made the decision to deny Students for Life USA access to the University land at corner of University Boulevard and Old Shell Road.

99.   After the University denied the request of Students for Life USA to use the empty lot, the group filed an application on or about October 8, 2013 to use the green space in front of Shelby Hall on October 15, 2013 for its cemetery of innocents.

100.   Shelby Hall is located at the corner of the same streets, University Boulevard and Old Shell Road.

101.   The University's College of Engineering is located in Shelby Hall.

102.   Because the University's Solicitation Policy delegates to the "designated facility representative" the responsibility for approving or disapproving of events, Defendant Steadman was responsible for reviewing Students for Life USA's application to use the area of land in front of Shelby Hall.

103.   Defendant Steadman, the Dean of the College of Engineering, denied Students for Life USA's application on October 11, 2013.

104.   Students for Life USA then requested permission to use the Student Center speech zone and was granted permission to use that location for October 15, 2013.

105.   On February 3, 2014, Students for Life USA applied again to use the lawn area in front of Shelby Hall for a cemetery of innocents.

106.   Again, Students for Life USA chose the area at the corner of University Boulevard and Old Shell Road because it would allow the group to

express its pro-life message to not only students on campus, but also the wider Mobile community.

107.   Defendant Steadman denied Students for Life USA's application.

108.   Defendant Steadman denied the application because Students for Life USA "advocates for a position that involves political and social controversy."  A copy of Defendant Steadman's February 6, 2014 email to Students for Life USA is attached as Exhibit 5 to this Complaint.

109.   Defendant Steadman also stated that placing the crosses in the lawn next to Shelby Hall would create the impression that the University endorsed the speech.  Ex. 5.

110.   Defendant Steadman told Students for Life USA that it should hold its event in the speech zone next to the Student Center.  Ex. 5.

111.   Students for Life USA has seen an engineering club event on the lawn outside Shelby Hall, which included a large, inflatable jousting platform, among other things.

112.   In his email, Defendant Steadman told Students for Life USA to contact Defendant Mitchell to reserve the speech zone next to the Student Center.

113.   Defendant Mitchell responded by email to Defendant Steadman and Students for Life USA and said that the University has "identified the free speech area of the student center as the appropriate location for any events or displays similar the [sic] the one mentioned here." Ex. 5.

114.   On information and belief, Defendant Mitchell directed Students for Life USA to use the speech zone because he agreed with Defendant Steadman's assessment that Students for Life USA's intended speech was controversial.

115.   On information and belief, Defendants Mitchell and Steadman considered the reaction of listeners to Students for Life USA's cemetery of

14

innocents and decided that it could not occur anywhere on campus except the speech zone.

116.   On February 14, 2014, Students for Life USA went to the Student Activities office in the Student Center and asked Rachael Bolden, the Assistant Director of the Student Center, if it could reserve space in the middle of a large traffic circle in the middle of campus.

117.   This traffic circle connects several main roads on the University's main campus, including USA North Drive, USA South Drive, Stadium Boulevard, Jack Brunson Drive, and Aubrey Green Drive.  A Google Maps view of this area is attached as Exhibit 6 to this Complaint.

118.   The area of land inside the traffic circle contains trees and grass.

119.   The area is ideally suited to allow Students for Life USA to reach a wider audience than just students at the Student Center because the traffic circle is a main connecting road on campus that many people from the University and Mobile communities use to travel through campus.

120.   Student organizations regularly hang large banners and signs, which they call sheet signs, from trees in the circle.   Several photographs showing examples of these sheet signs in the traffic circle are attached as Exhibit 7 to this Complaint.

121.   Recent sheet signs included advertisements for fraternity and sorority events, a night of worship, stress reduction meetings, among other things.

122.   When Students for Life USA began talking to Ms. Bolden on February 14, 2014, she replied immediately that "the only place your club can hold your events is at the Student Center free speech zone."

123.   This conversation occurred in the Student Center hallway in front of several other faculty and students, including Brigette Soderlind, who is Coordinator of Student Activities at the University.

124.   Students for Life USA then asked about the University's policy on student speech in the middle of the traffic circle.  Specifically, Students for Life USA asked if the area was a free speech zone because of the many unattended student sheet signs in that area.

125.   Ms. Bolden replied, "No, those signs are approved to be anywhere we approve them to be. Your event is different. I wouldn't call it a performance but … No, it is a performance. You put the crosses out and then you take them back. This type of event can't be allowed at that traffic circle."

126.   Students for Life USA then asked which areas on campus are the free speech areas.

127.   Ms. Bolden replied, "The only free speech area on campus is within the Student Center. In fact, the grassy area around the building is being given to you to hold your event even though it is not part of the free speech zone."

128.   On information and belief, Defendant Mitchell instructed Ms. Bolden to tell Students for Life USA that it may only engage in speech in the University's designated speech zone.

129.   Students for Life USA relented after Defendant Mitchell, Defendant Steadman, and Ms. Bolden refused to allow it to hold the event anywhere but the speech zone next to the Student Center and decided to hold the event at that location on February 20, 2014.  A photograph of Plaintiff's display at that location is attached as Exhibit 8 to this Complaint.

130.   The Student Center speech zone is an area near the flag poles that is approximately 3,600 square feet, which is 0.006% of the University's main campus.

131.   Students for Life USA wanted to display its cemetery of innocents on the lawn near Shelby Hall and on the lawn inside the traffic circle because it

wanted to express its message to not only students, but also people visiting campus.

132.   On information and belief, the University does not enforce the Solicitation Policy on student sheet signs in the traffic circle area.

133.   On information and belief, the University has not enforced the Solicitation Policy against students engaged in casual conversation, one-on-one discussions, group discussions, or the sharing of flyers, advertisements, or other documents with friends and peers on campus.

134.   Students for Life USA has witnessed other student organizations like an engineering club and the Political Science Club holding events outside the speech zone.

135.   Students for Life USA has witnessed other student organizations like fraternities, sororities, and religious groups hang unattended sheet signs in the traffic circle and other areas of campus.

136.   Students for Life USA desires to engage in peaceful expressive activities on campus—including oral communication, literature distribution, and symbolic speech like the cemetery of innocents—in areas outside the designated speech zone, but has not done so for fear of punishment.

137.   The University's enforcement of the Solicitation Policy against Students for Life USA burdens its speech for multiple reasons.

138.   Students for Life USA wants to engage in speech containing religious, political, and prolife messages while its representatives stand on public ways and open areas on the University's main campus.

139.   Specifically, Students for Life USA wants to hold the cemetery of innocents and distribute prolife flyers informing fellow students and Mobile community members about its prolife message.

140.   The University's speech zone is inadequate for Students for Life USA's speech because it wants to reach a wider audience and there is greater foot and vehicular traffic in other areas of campus.

141.   Specifically, Students for Life USA wants to display the cemetery of innocents near a major campus road so that nonstudents can receive its prolife message.

142.   Students for Life USA's speech is further frustrated because it cannot engage in any oral, written, or symbolic expression at the University until it first obtains a permit from the University to access the speech zone, and may only access that speech zone if it is not already reserved by someone else.

143.   The permit requirement, in and of itself, is unduly burdensome as it requires three days advance notice to Defendant Mitchell.

144.   The permit requirement means that Students for Life USA may not engage in spontaneous or anonymous speech on campus.

145.   It is repugnant to Students for Life USA that it, as a group composed of University students, must secure governmental permission to engage in oral, written, or symbolic expression, when it feels convicted by religious faith and political beliefs to speak on campus.

146.   Students for Life USA also likes to spread its message in reaction to current events.

147.   Students for Life USA and all University students require the ability to speak spontaneously in reaction to news.  And yet, the University's Solicitation Policy prohibits such spontaneous speech because it forces Students for Life USA to obtain a permit prior to speaking.

148.   Students for Life USA is bound to comply with the terms of the University's Solicitation Policy at all times on campus.

149.   Students for Life USA is not engaging in oral, written, and symbolic speech on prolife, political, and religious topics on campus due to the University's Solicitation Policy.

150.   Students for Life USA is chilled in its ability to discuss prolife, political, and religious topics on campus due to the University's Solicitation Policy.

151.   If not for the University's Solicitation Policy, and the actions of Defendants, Students for Life USA would immediately return to the open areas of the University campus to convey its messages about religion, morality, politics, and social issues, including its viewpoints on prolife issues.

152.   Specifically, Students for Life USA would distribute flyers about the affects of abortion on our society and display a cemetery of innocents.  Students for Life USA refrains from doing so for fear of arrest or punishment under the University's Solicitation Policy.

153.   The fear of arrest or punishment severely limits Students for Life USA's constitutionally-protected expression on campus.

## ALLEGATIONS OF LAW

154.   At all times relevant to this Complaint, each and all of the acts alleged herein were attributed to the Defendants who acted under color of a statute, regulation, custom, or usage of the State of Alabama.

155.   Defendants knew or should have known that by disallowing Students for Life USA's expressive activity on campus without it obtaining prior permission, and by restricting Students for Life USA's speech to a small speech zone, the University is violating Students for Life USA's constitutional rights.

156.   Students for Life USA is suffering irreparable harm from the policy and practice of Defendants.

157.   Students for Life USA has no adequate or speedy remedy at law to correct or redress the deprivation of its rights by Defendants.

158.   Unless the conduct of Defendants is enjoined, Students for Life USA will continue to suffer irreparable injury.

## FIRST CAUSE OF ACTION
### Violation of Plaintiff's First Amendment Right
### to Freedom of Speech

159.   Plaintiff repeats and realleges each of the allegations contained in paragraphs 1–158 of this Complaint.

160.   Speech, including oral, written, and symbolic expression, is entitled to comprehensive protection under the First Amendment.

161.   Religious and political speech is also fully protected by the First Amendment.

162.   The First Amendment rights of free speech and press extend to campuses of state colleges.

163.   The sidewalks and open spaces of the University campus are designated public fora—if not traditional public fora—for speech and expressive activities by students enrolled at the University.

164.   The First Amendment's Free Speech Clause, incorporated and made applicable to the states by the Fourteenth Amendment to the United States Constitution, prohibits content and viewpoint discrimination in the public forums for student speech and expression on the campus of a public university.

165.   A public university's ability to restrict speech—particularly student speech—in a public forum is limited.

166.   The First Amendment's Free Speech Clause prohibits censorship of religious and political expression.

167.   Under the First Amendment's Free Speech Clause, a prior restraint on citizens' expression is presumptively unconstitutional, unless it (1) does not delegate overly broad licensing discretion to a government official, (2) contains only content and viewpoint neutral reasonable time, place, and manner restrictions, (3) is narrowly tailored to serve a significant governmental interest, and (4) leaves open ample alternative means for communication.

168.   Unbridled discretion to discriminate against speech based on its content or viewpoint violates the First Amendment regardless of whether that discretion has ever been unconstitutionally applied in practice.

169.   The First Amendment's Free Speech Clause guarantees a citizen the right to express his views anonymously and spontaneously.

170.   Defendants' Solicitation Policy and their practice of restricting student speech to the speech zone violate the First Amendment facially and as applied because they are a prior restraint on speech in areas of campus that are traditional or designated public fora for University students.

171.   Defendants' Solicitation Policy and their practice of restricting student speech to the speech zone violate the First Amendment facially and as applied because they grant University officials unbridled discretion to discriminate against speech based on its content or viewpoint.

172.   Defendants' Solicitation Policy and associated practices that require students to submit an application for approval at least three days in advance of a proposed expressive activity and the limitation on the location of that activity to one small speech zone, are unconstitutional "time," "place," and "manner" restrictions that violate Plaintiff's and other students' right to freedom of speech and expression.

173.   Defendants' Solicitation Policy and associated practices provide no guidelines or standards to limit the discretion of University officials in granting,

denying, relocating, or restricting requests by students to engage in expressive activity.

174.   Defendants' Solicitation Policy and associated practices give Defendants unbridled discretionary power to limit student speech in advance of such expression on campus and to do so based on the content and viewpoint of the speech.

175.   These grants of unbridled discretion to University officials violate the First Amendment because they create a system in which speech is reviewed without any standards, thus giving students no way to prove that a denial, restriction, or relocation of their speech was based on unconstitutional considerations.

176.   The First Amendment's prohibition against content and viewpoint discrimination requires Defendants to provide adequate safeguards to protect against the improper exclusion, restriction, or relocation of student speech based on its content or viewpoint.

177.   Because Defendants have failed to establish neutral criteria governing the granting, denial, or relocation of student speech applications (including requests to use campus facilities), there is a substantial risk that University officials will engage in content and viewpoint discrimination when addressing those applications.

178.   Defendants exercised the unbridled discretion granted them under these Solicitation Policy and practices when they required Plaintiff to use the speech zone for its prolife cemetery of innocents display and prohibited the group from holding that display anywhere outside the speech zone.

179.   Defendants Mitchell and Steadman engaged in content and viewpoint discrimination when they labeled Plaintiff's speech "controversial" and for that reason refused to allow Plaintiff to speak anywhere but the designated speech zone.

180. Defendants' Solicitation Policy and associated practices do not contain any definite time period in which University officials must grant or deny students' requests to hold a free speech event.

181. The First Amendment protects the right to spontaneous and anonymous speech in public forums.

182. Defendants' Solicitation Policy and associated practices that require prior approval to speak prohibit students from anonymously communicating with passersby via oral, written, and symbolic expression.

183. Defendants' Solicitation Policy and associated practices that require three days advance notice to speak prohibit spontaneous expression.

184. Defendants' Solicitation Policy and associated practices are neither reasonable nor valid time, place, and manner restrictions on speech because they are not content-neutral, they are not narrowly tailored to serve a significant government interest, and they do not leave open ample alternative channels of communication.

185. Defendants' Solicitation Policy and associated practices are also overbroad because they prohibit and restrict protected expression.

186. Defendants' Solicitation Policy and associated practices unconstitutionally censor or restrict all private speech that occurs outside the speech zone that Defendants, in their unbridled discretion, designate, and they require students to register all expressive activities with Defendants in advance.

187. The overbreadth of Defendants' policies and related practices chills the speech of students not before the Court who seek to engage in private expression in the open, outdoor areas of campus.

188. Defendants' Solicitation Policy and associated practices chill, deter, and restrict Plaintiff from freely expressing its religious and political beliefs.

189.   Defendants' Solicitation Policy and associated practices violate Plaintiff's right to free speech as guaranteed by the First Amendment to the United States Constitution.

190.   Because of Defendants' actions, Plaintiff has suffered, and continues to suffer, economic injury and irreparable harm.   It is entitled to an award of monetary damages and equitable relief.

191.   Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to a declaration that Defendants violated its First Amendment right to freedom of speech and an injunction against Defendants' policy and actions.   Additionally, Plaintiff is entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including its reasonable attorneys' fees.

## SECOND CAUSE OF ACTION
### Violation of Plaintiff's Fourteenth Amendment Right to Due Process of Law

192.   Plaintiff repeats and realleges each of the allegations contained in paragraphs 1–158 of this Complaint.

193.   The Fourteenth Amendment to the United States Constitution guarantees Plaintiff the right to due process of law and prohibits Defendants from promulgating and employing vague standards that allow for viewpoint discrimination in Defendants' handling of Plaintiff's speech.

194.   The government may not regulate speech based on policies that permit arbitrary, discriminatory, and overzealous enforcement.

195.   The government may not regulate speech based on policies that cause persons of common intelligence to guess at their meaning and differ as to their application.

196.  Defendants' Solicitation Policy and associated practices contain no criteria to guide administrators when deciding whether to grant, deny, relocate, or restrict student speech on campus.

197.  Defendants Mitchell and Steadman and other University officials reviewed, without any guidelines or standards, Plaintiff's applications to use various open areas of campus.

198.  Defendants' Solicitation Policy and associated practices are impermissibly vague and ambiguous and are thus incapable of providing meaningful guidance to Defendants.

199.  The lack of criteria, factors, or standards in Defendants' Solicitation Policy and associated practices renders these policies and practices unconstitutionally vague and in violation of Plaintiff's right to due process of law under the Fourteenth Amendment.

200.  Because of Defendants' actions, Plaintiff has suffered, and continues to suffer irreparable harm.  It is entitled to an award of monetary damages and equitable relief.

201.  Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to a declaration that Defendants violated its Fourteenth Amendment right to due process of law and an injunction against Defendants' policy and actions. Additionally, Plaintiff is entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including its reasonable attorneys' fees.

### THIRD CAUSE OF ACTION
### <u>Violation of Plaintiff's Fourteenth Amendment Right</u>
### <u>to Equal Protection of the Law</u>

202.  Plaintiff repeats and realleges each of the allegations contained in paragraphs 1–158 of this Complaint.

203.   The Fourteenth Amendment to the United States Constitution guarantees Plaintiff the equal protection of the laws, which prohibits Defendants from treating Plaintiff differently than similarly situated students and student organizations.

204.   The government may not treat someone disparately as compared to similarly situated persons when such disparate treatment burdens a fundamental right, targets a suspect class, or has no rational basis.

205.   Plaintiff is similarly situated to other students and student organizations at the University.

206.   Defendants allowed other student organizations to speak in areas of campus where they prohibited Plaintiff from speaking.

207.   Defendants treated Plaintiff disparately when compared to similarly situated student organizations by denying Plaintiff the ability to speak in areas where other student organizations speak.

208.   Defendants' Solicitation Policy and associated practices violate various fundamental rights of Plaintiff, such as its freedom of speech and due process of law.

209.   When government regulations, like Defendants' Solicitation Policy and associated practices challenged herein, infringe on fundamental rights, discriminatory intent is presumed.

210.   Defendants' Solicitation Policy and associated practices have also been applied to discriminate intentionally against Plaintiff's rights to freedom of speech and due process of law.

211.   Defendants lack a rational or compelling state interest for such disparate treatment of Plaintiff.

212.  Defendants' Solicitation Policy and associated practices are not narrowly tailored as applied to Plaintiff because Plaintiff's speech does not implicate any of the interests Defendants' might have.

213.  Defendants have applied the Solicitation Policy and associated practices to Plaintiff in a discriminatory and unequal manner, allowing other student organizations to speak freely and display signs and banners when Defendants say Plaintiff cannot do the same, in violation of Plaintiff's right to equal protection of the laws under the Fourteenth Amendment.

214.  Defendants have permitted an engineering club and the Political Science Club to hold expressive events outside the designated speech zone.

215.  Defendants know about and have allowed student organizations to regularly hang unattended sheet signs in the traffic circle on a variety of topics, including student elections, fraternity and sorority events, and parties, and allowed them to solicit students outside the designated speech zone.

216.  Because of Defendants' actions, Plaintiff has suffered, and continues to suffer, economic injury and irreparable harm.  It is entitled to an award of monetary damages and equitable relief.

217.  Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to a declaration that Defendants violated their Fourteenth Amendment right to equal protection of law and an injunction against Defendants' policy and actions. Additionally, Plaintiff is entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including its reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants and provide Plaintiff with the following relief:

(A)    A declaratory judgment that Defendants' Solicitation Policy and associated practices, facially and as-applied, violate Plaintiff's rights under the First Amendment;

(B)    A declaratory judgment that Defendants' Solicitation Policy and associated practices, facially and as-applied, violate Plaintiff's rights under the Fourteenth Amendment;

(C)    A declaratory judgment that Defendants' restriction of Plaintiff's cemetery of innocents speech event violated Plaintiff's rights under the First and Fourteenth Amendments;

(D)    A preliminary and permanent injunction prohibiting Defendants, their agents, officials, servants, employees, and any other persons acting in their behalf from enforcing the Solicitation Policy and associated practices challenged in this Complaint;

(E)    Compensatory and nominal damages for the violation of Plaintiff's First and Fourteenth Amendment rights;

(F)    Plaintiff's reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988; and

(G)    All other further relief to which Plaintiff may be entitled.

//

//

//

//

Respectfully submitted this 3rd day of April, 2014,

By: /s/Norman J. Gale

| | |
|---|---|
| DAVID A. CORTMAN* | NORMAN J. GALE, JR. |
| Georgia Bar No. 188810 | ASB-4160-E62N |
| KEVIN H. THERIOT* | **GALE & GALE** |
| Georgia Bar No. 373095 | **ATTORNEYS AT LAW, P.C.** |
| TRAVIS C. BARHAM* | Executive Center II |
| Georgia Bar No. 753251 | 917 Western America Circle |
| **ALLIANCE DEFENDING FREEDOM** | Suite 205 |
| 1000 Hurricane Shoals Road NE | Mobile, Alabama 36609 |
| Suite D-1100 | (251) 460-0400 |
| Lawrenceville, Georgia 30043 | njg@galeandgale.com |
| (770) 339-0774 | |
| (770) 339-6744 Fax | |
| dcortman@alliancedefendingfreedom.org | *Application for admission *pro hac* |
| ktheriot@alliancedefendingfreedom.org | *vice* forthcoming. |
| tbarham@alliancedefendingfreedom.org | |

DAVID J. HACKER*
California Bar No. 249272
Illinois Bar No. 6283022
**ALLIANCE DEFENDING FREEDOM**
101 Parkshore Drive, Suite 100
Folsom, California 95630
(916) 932-2850
(916) 932-2851 Fax
dhacker@alliancedefendingfreedom.org

ATTORNEYS FOR PLAINTIFF

## DECLARATION UNDER PENALTY OF PERJURY

I, KATHERINE SWEET, a citizen of the United States and a resident of the

State of Alabama, hereby declare under penalty of perjury pursuant to 28 U.S.C. §

1746 that the foregoing is true and correct to the best of my knowledge.

Executed this __26____ day of March, 2014, at Mobile, Alabama.

KATHERINE SWEET
STUDENTS FOR LIFE USA