IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| STUDENTS FOR LIFE USA, etc., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 14-0157-WS-B |
| | ) |
| TONY G. WALDROP, etc., et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter is before the Court on the plaintiff's motion for preliminary injunction. (Doc. 44). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 45, 47, 48), and the motion is ripe for resolution.

The background of this action has been set forth in the Court's order granting in part the defendant's motion to dismiss. (Doc. 49). The plaintiff student organization at the University of South Alabama ("the University") challenges, on First Amendment, due process and equal protection grounds, two policies of the University addressing expressive activity. By the instant motion, the plaintiff seeks to enjoin the defendants from enforcing the First Policy and Section I(B)(1)(b) of the Second Policy. (Doc. 44 at 1). The Court has dismissed as moot "all claims for declaratory or injunctive relief with respect to the First Policy." (Doc. 49). Accordingly, the motion for preliminary injunction is due to be denied as to the First Policy.[1]

---

[1] In support of the instant motion, the plaintiff has submitted the declaration of its president to the effect that, when she attended a student organization leadership day in September 2014, she "did not hear anyone who works at the university mention the existence of the Second Policy." (Doc. 44-1 at 3). The plaintiff asserts that this proves the University "is still operating under the First Policy," (Doc. 45 at 9 n.1), such that its challenge to the First Policy is not moot. (*Id.* at 12).    (cont'd)

      The Second Policy provides in pertinent part as follows:

For USA students or employees, all areas of the University campus are open for expressive activities, except for the following:
- Areas between the street side of University buildings and facilities on the periphery of campus from the portal of North Drive to the corner of campus at Old Shell Road and University Boulevard and to the portal of Stadium Drive and the public sidewalks ….

(Doc. 29-10 at 3-4). This closing of the campus perimeter ("the Perimeter") to expressive activity is the plaintiff's sole challenge to the Second Policy. (Doc. 29 at 24-25; Doc. 45 at 10, 13, 19, 23, 28-29, 30; Doc. 48 at 9-11).

      "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *American Civil Liberties Union of Florida, Inc. v. Miami-Dade County School Board*, 557 F.3d 1177, 1198 (11th Cir. 2009) (internal quotes omitted). As the plaintiff acknowledges, (Doc. 45 at 13), "[a] district court may grant [preliminary] injunctive relief only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest."

---

      Because the plaintiff did not present this evidence in opposition to the defendant's motion to dismiss on grounds of mootness, it comes too late to be considered. At any rate, the plaintiff cites no authority for the facially illogical notion that the failure to mention a policy at a meeting proves the policy does not exist. Had the administration discussed the First Policy at the meeting (at least, had it done so without then explaining that the First Policy had been superseded by the Second), the plaintiff might have something, but there is no such evidence. Instead, the plaintiff argues that the mere failure to discuss University policy concerning expressive activity means the policy in force is the First Policy rather than the Second. That simply does not follow.

      In its reply brief, the plaintiff reasserts certain arguments concerning mootness that the Court fully considered and soundly rejected on motion to dismiss. (Doc. 48 at 12-14). Those arguments remain invalid for the reasons set forth in the Court's previous order.

*Id*. (internal quotes omitted). "Failure to show any of the four factors is fatal, and the most common failure is not showing a substantial likelihood of success on the merits." *Id*.; *accord Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011) ("If [the plaintiff] is unable to show a substantial likelihood of success on the merits, we need not consider the other requirements.").

With respect to the plaintiff's First Amendment claim, "the Supreme Court has broadly discerned three distinct (although not airtight) categories of government property for First Amendment purposes: traditional public fora, designated public fora, and limited public fora." *Bloedorn*, 631 F.3d at 1230. Identifying which is at issue is important, because "the degree of scrutiny we place on a government's restraint of speech is largely governed by the kind of forum the government is attempting to regulate." *Id*.

"Traditional public fora are public areas such as streets and parks that, since time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Bloedorn*, 631 F.3d at 1231 (internal quotes omitted). "A designated public forum is government property that has not traditionally been regarded as a public forum but that has been intentionally opened up for that purpose. … To create a designated public forum, the government must intentionally open up a location … for use by the public at large." *Id*. (internal quotes omitted). "Just as with a traditional public forum, a time, place, and manner restriction can be placed on a designated public forum only if it is content neutral, narrowly tailored to achieve a significant government interest, and leaves open ample alternative channels of communication." *Id*. (internal quotes omitted). Access to any other kind of forum (limited public forum or nonpublic forum) is subject to greater restriction. *Id*.

As noted, the Second Policy explicitly closes the Perimeter to expressive activity, and the plaintiff wisely makes no argument that, in the face of this clear language, the Perimeter could be a designated public forum. Nor does the plaintiff assert that, even if the Perimeter is a limited public forum or a nonpublic forum,

3

the Second Policy's closure of the Perimeter to expressive activity violates the First Amendment under the more relaxed standards applicable to such fora. Instead, the plaintiff argues exclusively that the Perimeter is a traditional public forum, the closure of which fails the strict scrutiny analysis applicable to such fora. (Doc. 45 at 15-16; Doc. 48 at 6, 9-11). Therefore, unless the plaintiff has shown a substantial likelihood of success in demonstrating that the Perimeter is a traditional public forum, it has not shown a substantial likelihood of success on the merits of its First Amendment claim.

The Perimeter, as described by the plaintiff, is a "park-like area with lawns, picnic benches, and trees next to the public sidewalks on Old Shell Road and University Boulevard." (Doc. 45 at 16). The plaintiff argues that the Perimeter is a traditional public forum because of these "physical characteristics" and because "students can socialize there." (Doc. 48 at 11).

The plaintiff cites a number of authorities, but they generally stand only for the proposition that, under the facts presented, a portion of a campus had been affirmatively opened up by the institution as a designated public forum. Because the plaintiff cannot demonstrate that the University has opened up the Perimeter as a designated public forum, and because the plaintiff makes no argument that the University has done so, these authorities are inapposite.

As for traditional public fora, the plaintiff asserts that "[t]he Supreme Court has determined that the outdoor areas of a public university campus, at least for students, are a traditional public forum." (Doc. 48 at 9). The cases on which the plaintiff relies for this proposition, however, do not support it. The Court in *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788 (1985), stated that "a university campus, at least as to its students, *possesses many of the characteristics* of a traditional public forum," *id*. at 803, (emphasis added), but it did not say that any part of a college campus *is* a traditional public forum. Nor could it have done so, since *Cornelius* did not involve campus speech but a "charity drive aimed at federal employees." *Id*. at 791.

4

The *Cornelius* Court relied on *Widmar v. Vincent*, 454 U.S. 263 (1981), which the plaintiff also cites. *Widmar* "present[ed] the question whether a state university, which makes its facilities generally available for the activities of registered student groups, may close its facilities to a registered student group desiring to use the facilities for religious worship and religious discussion." *Id*. at 264-65. The question was not whether a public forum existed – it did, because "the University has created [*i.e.*, designated] a forum generally open for use by student groups," *id*. at 267 – but whether, having created the forum, the university could discriminate against religious groups in the use of the forum. Nevertheless, the Court noted that it "has recognized that the campus of a public university, at least for its students, possesses many of the characteristics of a public forum." *Id*. at 267 n.5. As with the similar quote from *Cornelius*, this statement falls far short of a determination that the outdoor areas of campus are a traditional public forum.[2]

Indeed, *Widmar* is significant chiefly because it confirms that "[a] university *differs in significant respects* from public forums such as streets or parks or even municipal theaters." *Id*. (emphasis added). Because its "mission is education," a university has "authority to impose reasonable regulations compatible with that mission upon the use of its campus and facilities." *Id*. "We *have not held*, for example, that a campus must make all of its facilities equally available to students and nonstudents alike, or *that a university must grant free access to all of its grounds* or buildings." *Id*. (emphasis added). In context, *Widmar* more nearly states that the outdoor portions of a college campus are *not* a traditional public forum.

---

[2] As support for its statement that a public university campus, as to its students, possesses many characteristics of a public forum, the *Widmar* Court cited generally to *Police Department of Chicago v. Mosley*, 408 U.S. 92 (1972), and *Cox v. Louisiana*, 379 U.S. 536 (1965). *Mosley* involved picketing on a public sidewalk (a traditional public forum) adjacent to a public high school, while *Cox* involved a demonstration by college students on a public sidewalk across from the county courthouse. It is not clear what in these opinions supports the proposition for which they were cited.

The plaintiff next cites *Hays County Guardian v. Supple*, 969 F.2d 111 (5th Cir. 1982), for the proposition that "[t]he campus's function as the site of a community of full-time residents makes it 'a place where people may enjoy the open air or the company of friends and neighbors in a relaxed environment,' [citation omitted], and suggests an intended role more akin to a public street or park than a non-public forum." *Id*. at 117 (quoting *Heffron v. International Society for Krishna Consciousness*, 452 U.S. 640, 651 (1981)). *Hays County*, however, did not rule that all or any part of the campus was a traditional public forum; instead, it held – based on the university's written policies – that portions of campus were designated public fora. 969 F.2d at 116-17.

Moreover, the principle for which the plaintiff cites *Hays County* is not well supported therein. While the Fifth Circuit cited the same portion of *Widmar* as does the plaintiff herein, it ignored the remaining portions, quoted above, that undermine any effort to use *Widmar* as authority for considering any part of a college campus a traditional public forum. And although *Heffron* described a public street as a place where people can enjoy fresh air and conversation in a relaxed environment, it does not and cannot follow that any public outdoor location where people can talk and relax is therefore a traditional public forum. Thus, for example, the plaza outside the federal courthouse in Atlanta, though clearly appropriate for fresh air and conversation, is not a traditional public forum. *United States v. Gilbert*, 920 F.2d 978, 984 (11th Cir. 1991).

Finally, the plaintiff relies on *Roberts v. Haragan*, 346 F. Supp. 2d 853 (N.D. Tex. 2004). The *Roberts* Court formed the "preliminary assumption" that, "to the extent the campus has park areas, sidewalks, streets, or other similar common areas, these areas are public forums, at least for the University's students." *Id*. at 861. The Court believed these areas "might be referred to as traditional public forums," although it hedged that they might more properly be termed designated public fora – at least if one ignored the established definition of the term and found the designation to inhere in the act of designing a campus that

6

included features resembling streets and parks. *Id*. at 861 n.8. Alone among the authorities cited by the plaintiff, *Roberts* arguably stands for the proposition that park-like areas of a campus are traditional public fora.

The Court, however, does not find *Roberts* persuasive. For its unique ruling, *Roberts* relied on the same snippets from *Widmar* and *Hays County* that the Court has addressed above and found wanting. 346 F. Supp. 2d at 861. In addition, the *Roberts* Court relied on the unremarkable proposition that a college campus – in the present case, one covering almost two square miles – "'contains a variety of fora.'" *Id*. (quoting *Alabama Student Party v. Student Government Association*, 867 F.2d 1344, 1354 (11th Cir. 1989) (Tjoflat, J., dissenting)). And surely it does,[3] but the mere inability to assign a single label to an entire campus fails to establish that any part of the campus fits within the narrow definition of a traditional public forum.

As its final ground of support, *Roberts* noted the Supreme Court's statement that, "[i]n cases where the principal function of the property would be disrupted by expressive activity, the Court is particularly reluctant to hold that the government intended to designate a public forum." *Cornelius*, 473 U.S. at 804. The *Roberts* Court extrapolated from this statement – which on its face addresses only designated public fora – "an equally useful definition of what characterizes a traditional public forum, *viz*., government property whose principal function would not be disrupted by expressive activity." 346 F. Supp. 2d at 859 n.6. The definition of a traditional public forum, however, has been expressly provided by the Supreme Court, and the *Roberts* Court offered no justification for enlarging that definition to cover property which falls outside the Supreme Court's definition so long as the principal function of the property would not be disrupted by expressive activity.

---

[3] Because "[a] modern university contains a variety of fora," including various buildings, sports venues and open areas, "labeling the campus as one single type of forum is an impossible, futile task." *Bowman v. White*, 444 F.3d 967, 977 (8th Cir. 2006); *accord Bloedorn v. Grube*, 631 F.3d at 1232.

"Traditional public fora are those places which 'by long tradition or by government fiat have been devoted to assembly and debate.'" *Cornelius*, 473 U.S. at 802 (quoting *Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37, 45 (1985)). Streets and parks are traditional public fora, because they "'have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'" *Perry*, 460 U.S. at 45 (quoting *Hague v. Committee for Industrial Organization*, 307 U.S. 496, 515 (1939) (opinion of Roberts, J.)). Public sidewalks are also a traditional public forum, because they "traditionally have been held open to the public for expressive activities." *United States v. Grace*, 461 U.S. 171, 177, 179 (1983).

There are several key notions embedded in the definition of a traditional public forum. First is that "'a traditional public forum is property that has as a principal purpose … the free exchange of ideas.'" *International Society for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 679 (1992) (quoting *Cornelius*, 473 U.S. at 800).

Second is the necessity of a longstanding, traditional use of the property for public expressive activity. "The Court has rejected the view that traditional public forum status extends beyond its historic confines …." *Arkansas Educational Television Commission v. Forbes*, 523 U.S. 666, 678 (1998). "The doctrines surrounding traditional public forums may not be extended to situations where such a history is lacking." *United States v. American Library Association, Inc.*, 539 U.S. 194, 206 (2003). For example, "[t]he notion that federal military reservations, like municipal streets and parks, have traditionally served as a place for free public assembly and communication of thoughts by private citizens is thus historically and constitutionally false." *Greer v. Spock*, 424 U.S. 828, 838 (1976).

Third, "[t]he mere physical characteristics of the property cannot dictate forum analysis." *United States v. Kokinda*, 497 U.S. 720, 727 (1990) (plurality opinion). Instead, the "location and purpose of a publicly owned [property] is

8

critical to determining whether [it] constitutes a public forum. *Id*. at 728. Thus, a post office sidewalk that was "not distinguishable" in appearance from a nearby city sidewalk nevertheless was not a traditional public forum because it was not designed for use by the general public but only by those engaged in postal business. *Id*.

The plaintiff has not come to grips with these requirements. Instead, it seems to believe that, if a grassy area on the edge of campus has trees and benches, and students are permitted to socialize there, the area is perforce a traditional public forum. But even if it be assumed that the Perimeter looks somewhat like a park (though it has not been declared one), its "mere physical characteristics" cannot render it a traditional public forum any more than could the appearance of the sidewalk in *Kokinda*. Nor does use of the Perimeter for "socializing" establish its purpose as one of assembly, public debate and the free exchange of ideas. And even had the plaintiff offered evidence that a principal purpose of the Perimeter is expressive activity, it has done nothing to show that the republic boasts a long tradition of using the grassy border areas of public college campuses for such purposes.

The Eighth Circuit in *Bowman v. White*, 444 F.3d 967 (8th Cir. 2006), noted that the physical characteristics of certain open spaces on campus might on their own suggest they were traditional public fora but, in light of the educational mission of a university, "streets, sidewalks, and other open areas that might otherwise be traditional public fora may be treated differently when they fall within the boundaries of the University's vast campus." *Id*. at 978. The Court concluded the open areas at issue were not traditional public fora but designated public fora. The plaintiff does not address *Bowman*.

Even more damaging to the plaintiff is the Eleventh Circuit's pronouncement that "a state-funded university is not a traditional public forum …." *Bloedorn*, 631 F.3d at 1232. The sidewalks and pedestrian mall at issue in *Bloedorn* "physically resemble[d] municipal sidewalks and public parks," yet the

Court ruled they were but limited public fora, because "the purpose of a university is strikingly different from that of a public park," and "[i]ts essential function is not to provide a forum for general public expression and assembly." *Id*. at 1232-34.

   The plaintiff argues that *Bloedorn* is inapposite because it involved a citizen seeking access, not a student. The plaintiff, relying on *Widmar*'s statement that "the campus of a public university, at least for its students, possesses many of the characteristics of a public forum," 454 U.S. at 267 n.5, believes that the same property can simultaneously be a traditional public forum as to some (such as students) and something other than a traditional public forum as to others. (Doc. 48 at 9). But since, as already noted, *Widmar* did not state that a college campus is a traditional public forum, it also did not say that a college campus is a traditional public forum "at least for its students." The question is always "whether government property may be utilized for an expressive purpose *by the general public*." *Bloedorn*, 631 F.3d at 1230 (emphasis added). This is so not only for traditional public fora but for designated public fora as well, which are fora opened "for use by the public at large." *Id*. at 1231 (citing *Cornelius*, 473 U.S. at 802); *see also Miller v. City of Cincinnati*, 622 F.3d 524, 534 (6th Cir. 2010) ("The government creates a designated public forum when it opens a piece of public property *to the public at large*, treating [it] *as if it were a traditional public forum*.") (emphasis added); *Campbell v. St. Tammany's School Board*, 206 F.3d 482, 486 (5th Cir. 2000) ("Although a school is not a traditional public forum, a district *may designate it as such* by indiscriminately permitting use *by the public at large* for assembly and speech."), *vacated on other grounds*, 533 U.S. 913 (2001).

   For the reasons set forth above, the Court concludes the plaintiff has not demonstrated a substantial likelihood of showing that the Perimeter is a traditional public forum. Therefore, the plaintiff has not shown a substantial likelihood of

prevailing on the merits of its First Amendment claim. Absent such a likelihood, it cannot obtain a preliminary injunction under its First Amendment claim.

The plaintiff claims the Second Policy violates the Due Process Clause because it "does not clearly define the boundaries of the [Perimeter] between buildings or near athletic fields." (Doc. 45 at 25).[4] The plaintiff asserts the Second Policy violates the Equal Protection Clause because it prohibits expressive activity in the Perimeter but permits students to socialize there. (*Id*. at 26). Each of these arguments receives a single page or less of briefing, and each relies solely on glittering generalities that do not address the situation here presented. That is far too cursory a treatment to demonstrate a substantial likelihood of prevailing on the merits.[5] Moreover, the plaintiff has not addressed the other three requirements for injunctive relief at all.[6] The plaintiff therefore cannot obtain an injunction on the strength of these claims.

For the reasons set forth above, the plaintiff's motion for preliminary injunction is **denied**.

DONE and ORDERED this 27th day of February, 2015.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[4] The plaintiff also asserts the Second Policy is unconstitutionally overbroad, (Doc. 45 at 24-25), but the amended complaint on its face limits the plaintiff's due process challenge to one of vagueness, not overbreadth. (Doc. 29 at 32-34).

[5] The plaintiff expressly ties the success of its equal protection claim to the success of its First Amendment claim. (Doc. 45 at 34). Since the latter claim will not support injunctive relief, by the terms of the plaintiff's argument neither will the former.

As for the vagueness claim, it does not appear the plaintiff has any present intention of engaging in expressive activity between buildings or near athletic fields, (Doc. 44-1 at 4), so it seems unlikely this claim is even ripe.

[6] The plaintiff expressly limits its discussion of these requirements to its First Amendment claim. (Doc. 45 at 34-37).